# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUFUS HERNANDEZ,<br><br>    Plaintiff,<br><br>v.<br><br>DOE OFFICER ONE, et al.,<br><br>    Defendants. | Case No. 1:17-cv-00429-JLT (PC)<br><br>**ORDER DIMISSING THE COMAPLINT WITH LEAVE TO AMEND OR ALLOWING PLAINTIFF TO NOTIFY COURT OF WILLINGNESS TO PROCEED ONLY ON CLAIMS FOUND TO BE COGNIZABLE AND NOT BARRED**<br><br>**(Doc. 1)**<br><br>**21-DAY DEADLINE** |

In this action, Plaintiff alleges that he was brutalized by police officers when he was arrested, that he did not receive proper medical treatment for his injuries, and that the brutality he was subjected to during his arrest and various conditions of his confinement were in retaliation for his family wining a prior lawsuit against the Bakersfield Police Department regarding the death of his cousin. Plaintiff has stated one cognizable claim and may be able to correct the deficiencies in his pleading on other claims. Thus, the Court will allow Plaintiff to file a first amended complaint correcting the deficiencies or to advise the Court that he is willing to proceed only on the claims found cognizable herein.

**A.** **Screening Requirement**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The

Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally frivolous, malicious, fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2); 28 U.S.C. § 1915(e)(2)(B)(i)-(iii).

### B. <u>Plaintiff's Claims</u>

Plaintiff sets forth three claims against eight Doe defendants: (1) for excessive force, unlawful detention, and illegal search and seizure (Doc. 1, pp. 5-6): (2) for medical malpractice (*id.*, pp. 7-8); and (3) for cruel and unusual punishment and retaliation (*id.*, pp. 9-10). Though Plaintiff is currently housed at the Central Valley Modified Community Correctional Facility (CVMCCF) in McFarland, California, the events underlying his claims in this action occurred in Bakersfield, California.

Plaintiff has stated some cognizable claims and may be able to amend to correct the deficiencies in his pleading as to others. Thus, the Court provides the applicable standards related to his purported claims and leave to file a second amended complaint. Alternatively, Plaintiff may notify the Court that he wishes to proceed only on the claims now cognizable.

### C. <u>Pleading Requirements</u>

#### 1. **Federal Rule of Civil Procedure 8(a)**

"Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions," none of which applies to section 1983 actions. *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 512 (2002); Fed. R. Civ. Pro. 8(a). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. Pro. 8(a). "Such a statement must simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz*, 534 U.S. at 512.

Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Iqbal*, 556 U.S. at 678, quoting *Twombly*, 550 U.S. at 555. Factual

2

allegations are accepted as true, but legal conclusions are not. *Iqbal.* at 678; *see also Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009); *Twombly*, 550 U.S. at 556-557.

While "plaintiffs [now] face a higher burden of pleadings facts . . . ," *Al-Kidd v. Ashcroft*, 580 F.3d 949, 977 (9th Cir. 2009), the pleadings of *pro se* prisoners are still construed liberally and are afforded the benefit of any doubt. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). However, "the liberal pleading standard . . . applies only to a plaintiff's factual allegations," *Neitze v. Williams*, 490 U.S. 319, 330 n.9 (1989), "a liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled," *Bruns v. Nat'l Credit Union Admin.*, 122 F.3d 1251, 1257 (9th Cir. 1997) quoting *Ivey v. Bd. of Regents*, 673 F.2d 266, 268 (9th Cir. 1982), and courts are not required to indulge unwarranted inferences, *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). The "sheer possibility that a defendant has acted unlawfully" is not sufficient, and "facts that are 'merely consistent with' a defendant's liability" fall short of satisfying the plausibility standard. *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949; *Moss*, 572 F.3d at 969.

If he chooses to file a first amended complaint, Plaintiff should make it as concise as possible. He should simply state which of his constitutional rights he feels were violated by each Defendant and factual basis. Where the allegations against two or more Defendants are factually intertwined, Plaintiff need not repeat the factual allegations separately against each Defendant. Rather, Plaintiff should present his factual allegations and identify the Defendants he feels are thereby implicated.

### 2. Linkage Requirement

The Civil Rights Act (42 U.S.C. § 1983) requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by Plaintiff. *See Monell v. Department of Social Services*, 436 U.S. 658 (1978); *Rizzo v. Goode*, 423 U.S. 362 (1976). The Ninth Circuit has held that "[a] person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743

3

(9th Cir. 1978). In order to state a claim for relief under section 1983, Plaintiff must link each named defendant with some affirmative act or omission that demonstrates a violation of Plaintiff's federal rights.

Plaintiff must clearly identify which Defendant he feels is responsible for each violation of his constitutional rights and the factual basis for the claim so that each Defendant is placed on notice of the claims against him or her. *See Austin v. Terhune*, 367 F.3d 1167, 1171 (9th Cir. 2004).

### D.     Plaintiff's Claim

####     1.     Claim I (Doc. 1, pp. 5-6)

Plaintiff alleges that, on July 2, 2016, four Bakersfield police officers entered his house through the front door, with their guns drawn, without a warrant and without knocking. Plaintiff was sitting on the floor by the front door when they came in. Doe Officer #1 (D/O #1) ordered Plaintiff's mother, father, and fiancé (who was holding their 3 year old son) to get out of the house. D/O #1 held his family outside with his gun drawn.

D/Os #2, #3, and #4 held Plaintiff inside, still sitting on the floor. D/O #2 stood directly behind Plaintiff while D/Os #3 and #4 stood in front of Plaintiff to his right and left, respectively. While standing behind Plaintiff, D/O #1 asked Plaintiff's name, which Plaintiff stated. D/O #1 then closed the front door and told Plaintiff to lay face down. As Plaintiff complied, D/O #2 jumped on Plaintiff's back, pulled his head all the way back, and sprayed Plaintiff in the face with O.C. spray. At the same time, D/O #3 pulled out his baton and started to hit Plaintiff's legs numerous times -- ultimately breaking his left leg. While this was going on, D/O #4 started to kick Plaintiff and grabbed Plaintiff's left arm, breaking it with a hard twist. During this, Plaintiff was choking and trying to yell for help. At one point, D/O #2 stopped hitting Plaintiff's legs with his baton and said to D/Os #3 and #4 "let's give him the Lopez treatment." D/O #2, #3, and #4 drew their guns at Plaintiff and D/O #4 yelled "Gun!" At that very moment, Plaintiff's fiancé moved past D/O #1 and came through the front door. D/Os #2, #3, and #4 turned their guns toward her and their son and D/O #4 told her "get the fuck out of here or the same will happen to you." D/O #2 put his gun away, grabbed Plaintiff's arms and put him in handcuffs. D/Os #2 and

4

#4 grabbed Plaintiff's arms and drug him to the squad car because he could not walk. D/O #3 came to the Plaintiff in the care and told Plaintiff to tell him where the DVR to Plaintiff's security camera was. Plaintiff did not tell him. Thereafter, D/O #1 drove Plaintiff to kern Medical Center Hospital to be treated.

### a. Excessive Force

The Fourth Amendment prohibits unreasonable searches and seizures. The use of excessive force to effect an arrest is analyzed under the standards of the Fourth Amendment. *Graham v. Connor*, 490 U.S. 386, 394 (1989) (citing *Tennessee v. Garner*, 471 U.S. 1, 7-22 (1985)). "[R]easonableness is always the touchstone of Fourth Amendment analysis," *Birchfield v. North Dakota,* 579 U.S. ---, ---, 136 S.Ct. 2160, 2186 (2016), and ". . . is generally assessed by carefully weighing the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion.'" *Cty. of Los Angeles, Calif. v. Mendez*, --- U.S. ---, 137 S. Ct. 1539, 1546-47 (2017) (quoting *Garner,* 471 U.S. at 8).

The Supreme Court's rulings have set forth a settled and exclusive framework for analyzing whether the force used in making a seizure complies with the Fourth Amendment. *Mendez,* 137 S.Ct. at 1546-47 (citing *Graham,* 490 U.S., at 395). "Determining whether the force used to effect a particular seizure is 'reasonable' " requires balancing of the individual's Fourth Amendment interests against the relevant government interests. *Graham.,* at 396, 109 S.Ct. 1865. The operative question in excessive force cases is "whether the totality of the circumstances justifie[s] a particular sort of search or seizure." *Garner,* 471 U.S. at 8-9.

This "objective" inquiry requires "careful attention to the facts and circumstances of each particular case." *Graham,* at 396. "[T]he 'reasonableness' of a particular seizure depends not only on *when* it is made, but also on *how* it is carried out." *Id.,* at 395, (citing *Garner*, at 7-8) (emphasis in original). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Ibid.* "Excessive force claims ... are evaluated for objective reasonableness based upon the information the officers had when the conduct occurred." *Saucier v. Katz,* 533 U.S. 194, 207

5

(2001). "That inquiry is dispositive: When an officer carries out a seizure that is reasonable, taking into account all relevant circumstances, there is no valid excessive force claim." *Mendez*, 137 S.Ct. at 1547.

Plaintiff does not state a cognizable claim against D/O #1 because he fails to state any allegations to show that D/O #1 was in any way involved in the attack. Likewise, the Court has reviewed the docket of the Kern County Superior Court in Case Number BF16421A and has learned that Plaintiff plead no contest to violation of California Penal Code Section 148(A)(1) stemming from his arrest on July 2, 2016.[1] As a consequence, Plaintiff was sentenced to 28 days in jail, 14 of which had already been served by the time of sentencing, and to pay a fine. Thus, it appears that Plaintiff's claims against D/Os #2, #3, and #4 may be *Heck* barred.

**b.** ***Heck* Bar**

When a complaint seeks damages in a § 1983 action and a judgment in the plaintiff's favor would necessarily imply the invalidity of the plaintiff's criminal conviction based upon acts upon which the § 1983 is premised, the action is barred unless the plaintiff demonstrates the conviction has been reversed. *Heck v. Humphrey*, 512 U.S. 477, 486–487 (1994). "In evaluating whether claims are barred by *Heck*, an important touchstone is whether a § 1983 plaintiff could prevail only by negating 'an element of the offense of which he has been convicted.' " *Cunningham v. Gates*, 312 F.3d 1148, 1153–54 (9th Cir.2002) quoting *Heck* at 487 n. 6.

Plaintiff alleges that he did not resist the officers at all. However, in entering the plea to the charge of violating California Penal Code section 148, he has admitted that he willfully resisted, delayed, or obstructed a peace officer during the discharge of the officer's duties. Thus, if he wishes to pursue a claim of excessive force against D/Os #2, #3, and #4, he must file an amended complaint which sets forth truthful factual allegations that his conviction has been set

---

[1] The court may take notice of facts that are capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b); United States v. Bernal-Obeso, 989 F.2d 331, 333 (9th Cir. 1993). The record of state court proceeding is a source whose accuracy cannot reasonably be questioned, and the Court may take judicial of these court records. Mullis v. United States Bank. Ct., 828 F.2d 1385, 1388 n.9 (9th Cir. 1987); Valerio v. Boise Cascade Corp., 80 F.R.D. 626, 635 n. 1 (N.D.Cal.1978), *aff'd*, 645 F.2d 699 (9th Cir.); see also Colonial Penn Ins. Co. v. Coil, 887 F.2d 1236, 1239 (4th Cir. 1989); Rodic v. Thistledown Racing Club, Inc., 615 F.2d 736, 738 (6th. Cir. 1980).

aside through direct appeal or that the acts upon which his conviction is based are unrelated to the force used by the officers.

### b. Illegal Search & Seizure

The Fourth Amendment guarantees the right of citizens to be free from unreasonable governmental searches. *United States v. Ruckes*, 586 F.3d 713, 716 (9th Cir. 2009). "[S]ubject only to a few specifically established and well-delineated exceptions, 'a search is presumed to be unreasonable under the Fourth Amendment if it is not supported by probable cause and conducted pursuant to a valid search warrant.'" *Id.* (quoting *United States v. Caseres*, 533 F.3d 1064, 1070 (9th Cir. 2008)). "Probable cause exists when, under the totality of the circumstances, 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Luong*, 470 F.3d 898, 902 (9th Cir. 2006) (quoting *Illinois v. Gates*, 462 U.S. 213, 238, 103 S. Ct. 2317 (1983)) (emphasis added). Plaintiff alleges that D/Os #1, #2, #3, and #4 entered the front door of his home without a warrant, which suffices at the pleading stage to state a cognizable claim.

### c. Unlawful Detention

Police may detain persons without probable cause while executing a search warrant if justified by the circumstances. *Michigan v. Summers,* 452 U.S. 692, 705 (1981). Such a detention may be unlawful under the Fourth Amendment "either because the detention itself is [unreasonable] or because it is carried out in an unreasonable manner." *Franklin v. Foxworth,* 31 F.3d 873, 876 (9th Cir. 1994). A seizure must be "carefully tailored" to the law enforcement interests that, according to the *Summers* line of cases, justify detention while a search warrant is being executed. *Ganwich v. Knapp,* 319 F.3d 1115, 1122 (9th Cir. 2003) (quoting *Florida v. Royer,* 460 U.S. 491, 504 (1983)). Where such law enforcement interests arguably justify a detention, we balance those interests against the intrusiveness of the seizure to the persons detained. *Summers,* 452 U.S. at 699-705 (1981); *Ganwich,* 319 F.3d at 1120. Thus, the reasonableness of a detention depends not only on *if* it is made, "but also on *how* it is carried out." *Franklin,* 31 F.3d at 875 (quoting *Tennessee v. Garner,* 471 U.S. 1, 7-8 (1985)). "[A] detention conducted in connection with a search may be unreasonable if it is unnecessarily painful,

degrading, or prolonged [.]" *Id.* at 876. Plaintiff's allegations that he was attacked and beaten by the police during the July 2, 2016 incident is not cognizable against D/O #1 because Plaintiff did not link that officer to the offending incident. Likewise, because the claims against D/Os #2, #3, and #4 appear to be *Heck* barred, he has not stated a cognizable claim against these defendants either.

### 2. Claim II (Doc. 1, pp. 7-8)

Plaintiff alleges that the officers took him to the Kern Medical Center Hospital for treatment. There, Doe Dr. #5 came into the exam room and stated "this is what you get for running from the police." Plaintiff responded that he didn't run from them. Dr. #5 asked Plaintiff if he was hurting and Plaintiff indicated that his left arm and left leg hurt. Dr. #5 looked at his arm and said it was fine and that his leg was broken. Dr. #5 put a "band" around Plaintiff's leg and told the officers that Plaintiff was done. Plaintiff asked for pain medications, but Dr. #5 just said "don't run from the police" and did not give him anything for pain. D/O #1 then drove Plaintiff to the Kern County Jail where he was seen by Doe #8 in the medical center. Doe #8 looked at Dr. #5's report and looked at Plaintiff and asked if Plaintiff had any other pain. Plaintiff indicated that he did and that his left arm was broken as well. Doe #8 just said that Plaintiff was done and did not give Plaintiff anything for pain, despite his request.

After booking, Plaintiff was placed in the jail. A few days later, Plaintiff was taken back to the Kern Medical Center Hospital where he was seen by another physician who sent Plaintiff for x-rays of his left arm and leg -- which revealed that both were broken. Plaintiff's arm and leg were placed in casts and he was returned to the jail with crutches. Plaintiff alleges that these incidents amounted to medical negligence and checked the box for a medical care under § 1983.

#### a. Medical Claims

A decision, "if made by a professional,[2] is presumptively valid; liability may be imposed only when the decision by the professional is such a substantial departure from accepted

---

[2] The *Youngberg* Court defined a " 'professional' decision-maker," as "a person competent, whether by education, training or experience, to make the particular decision at issue. Long-term treatment decisions normally should be made by persons with degrees in medicine or nursing, or with appropriate training in areas such as psychology, physical therapy, or the care and training of the retarded." 457 U.S. at 323, n. 30.

8

professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Mitchell v. Washington*, 818 F.3d 436, 443 (9th Cir. 2016) (quoting *Youngberg v. Romeo*, 457 U.S. 307, 323 (1982)). *See Parham v. J. R.*, 442 U.S. 584, 608, n. 16 (1979) (In limiting judicial review of medical decisions made by professionals, "it is incumbent on courts to design procedures that protect the rights of the individual without unduly burdening the legitimate efforts of the states to deal with difficult social problems"); *see also Rhodes v. Chapman*, 452 U.S. 337, 352 (1981) ("[C]ourts cannot assume that state legislatures and prison officials are insensitive to the requirements of the Constitution or to the perplexing sociological problems of how best to achieve the goals of the penal function in the criminal justice system ..."); *Bell v. Wolfish*, 441 U.S. 520, 539 (1979) (In the context of conditions of confinement of pretrial detainees, "[c]ourts must be mindful that these inquiries spring from constitutional requirements and that judicial answers to them must reflect that fact rather than a court's idea of how best to operate a detention facility"); *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974) (In considering a procedural due process claim in the context of prison, "there must be mutual accommodation between institutional needs and objectives and the provisions of the Constitution that are of general application"); *compare Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1243-44 (9th Cir. 2010) (rejecting the *Youngberg* standard and applying the deliberate indifference standard to a pretrial detainee's right to medical care, and noting that pretrial detainees, who are confined to ensure presence at trial, are not similarly situated to those civilly committed).

This standard has been referred to as the "*Youngberg* professional judgment standard." *Ammons*, 648 F.3d at 1027. "The *Youngberg* standard differs from the 'deliberate indifference' standard used in Eighth Amendment cruel and unusual punishment cases, in that '[p]ersons who have been involuntarily committed are entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish.'" *Mitchell*, 818 F.3d at 443 (citing *Ammons*, 648 F.3d at 1027 (quoting *Youngberg*, 457 U.S. at 321-22) (internal quotation marks omitted)). ). The professional judgment standard is an objective standard and it equates "to that required in ordinary tort cases for a finding of conscious

9

indifference amounting to gross negligence." *Ammons v. Washington Dep't of Soc. & Health Servs.*, 648 F.3d 1020, 1029 (9th Cir. 2011), *cert. denied*, 132 S.Ct. 2379 (2012) (citations and internal quotation marks omitted).

Plaintiff does not state a cognizable claim under § 1983 against Doe Dr. #5 as he fails to state any allegations upon which to find that Doe Dr. #5 is a public employee. Plaintiff states a cognizable claim against Doe #8 as this individual appears to be a public employee, with medical training, who merely looked at Doe Dr. #5's report and did not provide Plaintiff any further treatment, despite the fractures of both his leg and arm. Plaintiff may, however, be able to state a claim against both Doe Dr. #5 and Doe #8 under California law for professional negligence -- medical malpractice.

"The elements of a medical malpractice claim are (1) the duty of the professional to use such skill, prudence, and diligence as other members of his profession commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection between the negligent conduct and resulting injury; and (4) actual loss or damage resulting from the professional's negligence." *Avivi v. Centro Medico Urgente Medical Center*, 159 Cal.App.4th 463, 468, n. 2, 71 Cal.Rptr.3d 707 (Ct.App.2008) (internal quotations and citation omitted); *Johnson v. Superior Court*, 143 Cal.App.4th 297, 305, 49 Cal.Rptr.3d 52 (2006).

Medical professionals are negligent if they fail to use the level of skill, knowledge, and care in diagnosis and treatment that other reasonably careful medical professional would use in the same or similar circumstances. This level of skill, knowledge, and care is sometimes referred to as "the standard of care" and can usually only be opined by other medical professionals. *Landeros v. Flood*, 17 Cal.3d 399, 408 (1976); *see also Brown v. Colm*, 11 Cal.3d 639, 642–643 (1974); *Mann v. Cracchiolo*, (1985) 38 Cal.3d 18, 36; and Judicial Council of California Civil Jury Instruction 500, Summer 2008 Supplement Instruction. Plaintiff has not stated a cognizable claim medical malpractice claim against Doe Dr. #5 or Doe #8 as he fails to state any allegations to address any of the requisite elements.

Further, if Doe Dr. #5 and/or Doe #8 are public employees under the California Government Claims Act, set forth in California Government Code sections 810 et seq., a plaintiff

10

may not bring a suit for monetary damages against a public employee or entity unless the plaintiff first presented the claim to the California Victim Compensation and Government Claims Board, and the Board acted on the claim, or the time for doing so expired. "The Tort Claims Act requires that any civil complaint for money or damages first be presented to and rejected by the pertinent public entity." *Munoz v. California*, 33 Cal.App.4th 1767, 1776, 39 Cal.Rptr.2d 860 (1995). The purpose of this requirement is "to provide the public entity sufficient information to enable it to adequately investigate claims and to settle them, if appropriate, without the expense of litigation," *City of San Jose v. Superior Court*, 12 Cal.3d 447, 455 (1974) (citations omitted), and "to confine potential governmental liability to rigidly delineated circumstances: immunity is waived only if the various requirements of the Act are satisfied," *Nuveen Mun. High Income Opportunity Fund v. City of Alameda, Cal.*, 730 F.3d 1111, 1125 (9th Cir. 2013). Compliance with this "claim presentation requirement" constitutes an element of a cause of action for damages against a public entity or official. *State v. Superior Court (Bodde)*, 32 Cal.4th 1234, 1244, 13 Cal.Rptr.3d 534, 90 P.3d 116 (2004). Thus, in the state courts, "failure to allege facts demonstrating or excusing compliance with the claim presentation requirement subjects a claim against a public entity to a demurrer for failure to state a cause of action." *Id*. at 1239, 13 Cal.Rptr.3d 534, 90 P.3d 116 (fn.omitted).

Federal courts likewise must require compliance with the CGCA for pendant state law claims that seek damages against state public employees or entities. *Willis v. Reddin*, 418 F.2d 702, 704 (9th Cir.1969); *Mangold v. California Public Utilities Commission*, 67 F.3d 1470, 1477 (9th Cir.1995). State tort claims included in a federal action, filed pursuant to 42 U.S.C. § 1983, may proceed only if the claims were first presented to the state in compliance with the claim presentation requirement. *Karim-Panahi v. Los Angeles Police Department*, 839 F.2d 621, 627 (9th Cir.1988); *Butler v. Los Angeles County*, 617 F.Supp.2d 994, 1001 (C.D.Cal.2008). Plaintiff fails to state any allegations which show he complied with the CGCA upon which to be allowed to pursue claims for violation of California law in this action.

Moreover, pursuant to 28 U.S.C. § 1367(a), in any civil action in which the district court has original jurisdiction, the district court "shall have supplemental jurisdiction over all other

claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III," except as provided in subsections (b) and (c). "[O]nce judicial power exists under § 1367(a), retention of supplemental jurisdiction over state law claims under 1367(c) is discretionary." *Acri v. Varian Assoc., Inc.*, 114 F.3d 999, 1000 (9th Cir. 1997). "The district court may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3); *Parra v. PacifiCare of Ariz., Inc.*, 715 F.3d 1146, 1156 (9th Cir. 2013); *Herman Family Revocable Trust v. Teddy Bear*, 254 F.3d 802, 805 (9th Cir. 2001); *see also Watison v. Carter*, 668 F.3d 1108, 1117-18 (9th Cir. 2012) (even in the presence of cognizable federal claim, district court has discretion to decline supplemental jurisdiction over novel or complex issue of state law of whether criminal statutes give rise to civil liability). The Supreme Court has cautioned that "if the federal claims are dismissed before trial, . . . the state claims should be dismissed as well." *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966). If Plaintiff has complied with the CTCA, jurisdiction over his claims under California law will only be exercised by this Court as long as he has federal claims pending.

### 3. Claim III (Doc. 1, pp. 9-10)

When Plaintiff arrived at the Kern County Jail, while on crutches and with his left arm and leg in casts, he was required to drag his mattress and bed roll all the way to his housing. Once housed, Plaintiff submitted "a few sick call medical slips" indicating that his arm and leg were broken and requested medication for pain. However, he was never seen by any other doctor and did not receive any medication for pain.

Plaintiff alleges that a few times he did not get food because he was not able to get to the door of his cell in time to receive a tray when chow was passed out. Plaintiff reported this to his public defender who did nothing, and to his fiancée who called the Kern County Jail and reported it without effect.

Plaintiff alleges that the deputies were retaliating against him because he said he was going to sue the Bakersfield Police Department for the incidents alleged in this action. Plaintiff says that after he "filed a claim against the City of Bakersfield" officers again went to his home

and searched it, saying they were looking for Plaintiff, and ended up taking Plaintiff's DVR and security cameras.

Plaintiff alleges these incidents amounted to cruel & unusual punishment and retaliation. However, Plaintiff fails to link the allegations in Claim III to any specific individual. As stated above, § 1983 requires an actual connection or link between the actions of the defendants and the deprivation Plaintiff allegedly suffered. *Monell*, 436 U.S. 658. Claim III fails to put any defendant on notice of Plaintiff's claims against him or her. *Austin*, 367 F.3d at 1171. Despite this, Plaintiff is given the legal standards for his delineated causes of action under Claim III and opportunity to file an amended complaint.

### a. Cruel & Unusual Punishment

Claims of a detainee challenging the conditions of confinement arise under the substantive due process clause of the Fourteenth Amendment. *Youngberg v. Romeo*, 457 U.S. 307, 321-22 (1982); *Jones v. Blanas*, 393 F.3d 918, 931-32 (9th Cir. 2004). However, the Eighth Amendment provides "a minimum standard of care" for determining the rights of pretrial detainees. *Or. Advocacy Ctr. v. Mink*, 322 F.3d 1101, 1120 (9th Cir.2003), quoting *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983). Thus, though the Court is guided by the Eighth Amendment, if the events at issue occurred before Plaintiff was convicted of any crime, he cannot state a claim under the Eighth Amendment and, instead, must proceed only under the Fourteenth Amendment.

The Eighth Amendment protects from inhumane methods of punishment and from inhumane conditions of confinement. *Farmer v. Brennan*, 511 U.S. 825 (1994); *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006). Thus, no matter where housed, officials have a duty to ensure that those under their care are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety. *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000) (quotation marks and citations omitted). To establish a violation of the Eighth Amendment, one must "show that the officials acted with deliberate indifference. . . ." *Labatad v. Corrections Corp. of America*, 714 F.3d 1155, 1160 (9th Cir. 2013) (citing *Gibson v. County of Washoe*, 290 F.3d 1175, 1187 (9th Cir. 2002).

The deliberate indifference standard involves both an objective and a subjective prong.

First, the alleged deprivation must be, in objective terms, "sufficiently serious." *Farmer* at 834. Second, subjectively, the government official must "know of and disregard an excessive risk to inmate health or safety." *Id.* at 837; *Anderson v. County of Kern*, 45 F.3d 1310, 1313 (9th Cir. 1995).

Objectively, extreme deprivations are required to make out a conditions of confinement claim and only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). Although the Constitution " 'does not mandate comfortable prisons,' " *Wilson v. Seiter*, 501 U.S. 294, 298 (1991) (quoting *Rhodes*, 452 U.S. at 349), persons confined "are entitled to reasonably adequate sanitation, personal hygiene, and laundry privileges, particularly over a lengthy course of time," *Howard*, 887 F.2d at 137. Some conditions of confinement may establish an Eighth Amendment violation "in combination" when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise -- for example, a low cell temperature at night combined with a failure to issue blankets. *Wilson*, 501 U.S. at 304-05 (comparing *Spain v. Procunier*, 600 F.2d 189, 199 (9th Cir. 1979) (outdoor exercise required when prisoners otherwise confined in small cells almost 24 hours per day), with *Clay v. Miller*, 626 F.2d 345, 347 (4th Cir. 1980) (outdoor exercise not required when prisoners otherwise had access to dayroom 18 hours per day)). To say that some prison conditions may interact in this fashion is far from saying that all prison conditions are a seamless web for Eighth Amendment purposes. *Id.* Amorphous "overall conditions" cannot rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists. *Id.* Further, temporarily unconstitutional conditions of confinement do not necessarily rise to the level of constitutional violations. *See Anderson*, 45 F.3d 1310, *ref. Hoptowit*, 682 F.2d at 1258 (*abrogated on other grounds by Sandin*, 515 U.S. 472 (in evaluating challenges to conditions of confinement, length of time the prisoner must go without basic human needs may be considered)). Thus, Plaintiff's factual allegations as to the conditions he was subjected to during his time at the Kern County Jail must be evaluated to determine whether they demonstrate a

deprivation of a basic human need individually or in combination.

Subjectively, if an objective deprivation is shown, a plaintiff must show that government officials acted with a sufficiently culpable state of mind, that of "deliberate indifference." *Wilson*, 501 U.S. at 303; *Labatad*, 714 F.3d at 1160; *Johnson*, 217 F.3d at 733. "Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir.2004). "Under this standard, the [ ] official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" *Id.* at 1057 (quoting *Farmer*, 511 U.S. at 837). "'If a [ ] official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.'" *Id.* (quoting *Gibson v. County of Washoe, Nevada*, 290 F.3d 1175, 1188 (9th Cir. 2002)). To prove knowledge of the risk, however, one may rely on circumstantial evidence; in fact, the very obviousness of the risk may be sufficient to establish knowledge. *Farmer*, 511 U.S. at 842; *Wallis v. Baldwin*, 70 F.3d 1074, 1077 (9th Cir. 1995).

### b. Retaliation

Individuals have a First Amendment right to file grievances against government officials and to be free from retaliation for doing so. *Waitson v. Carter*, 668 F.3d 1108, 1114-1115 (9th Cir. 2012); *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir.2009). A retaliation claim has five elements. *Id.* at 1114.

First, the plaintiff must allege that the retaliated-against conduct is protected. *Id.* The filing of an inmate grievance is protected conduct, *Rhodes v. Robinson*, 408 F.3d 559, 568 (9th Cir. 2005), as are the rights to speech or to petition the government, *Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir. 1985); *see also Valandingham v. Bojorquez*, 866 F.2d 1135 (9th Cir. 1989); *Pratt v. Rowland*, 65 F.3d 802, 807 (9th Cir. 1995). Second, the plaintiff must show the defendant took adverse action against the plaintiff. *Rhodes*, at 567. Third, the plaintiff must allege a causal connection between the adverse action and the protected conduct. *Waitson*, 668 F.3d at 1114. Fourth, the plaintiff must allege that the "official's acts would chill or silence a person of ordinary firmness from future First Amendment activities." *Robinson*, 408 F.3d at 568 (internal quotation marks and emphasis omitted). "[A] plaintiff who fails to allege a chilling

effect may still state a claim if he alleges he suffered some other harm," *Brodheim*, 584 F.3d at 1269, that is "more than minimal," *Robinson*, 408 F.3d at 568 n.11. Fifth, the plaintiff must allege that the "retaliatory action did not advance legitimate goals of the [ ] institution. . . ." *Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir.1985).

It bears repeating that while Plaintiff need only allege facts sufficient to support a plausible claim for relief, the mere possibility of misconduct is not sufficient, *Iqbal*, 556 U.S. at 678-79, and the Court is "not required to indulge unwarranted inferences," *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). Thus, Plaintiff's mere allegations that he was retaliated against because he said he was going to file a claim is insufficient to show that Plaintiff engaged in protected activity that was the motivating factor behind a defendant's actions.

### E. CONCLUSION

Plaintiff is given the choice to either file a first amended complaint, or proceed on the claims found cognizable in this order. Plaintiff must either notify the Court of his decision to proceed on the cognizable claims, or file a first amended complaint **within 21 days** of the service of this order.

If Plaintiff chooses to file a first amended complaint, he must demonstrate how the conditions complained of have resulted in a deprivation of Plaintiff's constitutional rights. *See Ellis v. Cassidy*, 625 F.2d 227 (9th Cir. 1980). The first amended complaint must allege in specific terms how each named defendant is involved. There can be no liability under section 1983 unless there is some affirmative link or connection between a defendant's actions and the claimed deprivation. *Rizzo v. Goode*, 423 U.S. 362 (1976); *May v. Enomoto*, 633 F.2d 164, 167 (9th Cir. 1980); *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).

The amended complaint should be brief. Fed. R. Civ. P. 8(a). Such a short and plain statement must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957). Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. 127, 555

(2007) (citations omitted).

Plaintiff is further informed that an amended complaint supercedes the original, *Lacey v. Maricopa County*, Nos. 09-15806, 09-15703, 2012 WL 3711591, at *1 n.1 (9th Cir. Aug. 29, 2012) (en banc), and must be "complete in itself without reference to the prior or superceded pleading," Local Rule 220.

The Court provides Plaintiff with opportunity to amend to cure the deficiencies identified by the Court in this order. *Noll v. Carlson*, 809 F.2d 1446, 1448-49 (9th Cir. 1987). Plaintiff may not change the nature of this suit by adding new, unrelated claims in his first amended complaint. *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints).

Based on the foregoing, the Court **ORDERS**:

1. **Within 21 days** from the date of service of this order, Plaintiff must either:
   a. file a first amended complaint curing the deficiencies identified by the Court in this order, or
   b. notify the Court in writing that he does not wish to file a first amended complaint and wishes to proceed only on the claim that that D/Os #1, #2, #3, and #4 entered his home without lawful authority in violation of the Fourth Amendment; or
   c. file a notice of voluntary dismissal; and
2. The Clerk's Office shall send Plaintiff a civil rights complaint form.

**If Plaintiff fails to comply with this order, he will be allowed to proceed only on the claims found cognizable herein and all other claims and Defendants will be dismissed with prejudice.**

IT IS SO ORDERED.

Dated: __**June 27, 2017**__          __**/s/ Jennifer L. Thurston**__
                                                   UNITED STATES MAGISTRATE JUDGE